James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN,
 CECCHI, STEWART & OLSTEIN
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Stephen A. Weiss
Jonathan Shub
SEEGER & WEISS LLP
550 Broad Street
Newark, New Jersey 07102

Paul M. Weiss
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEBBIE MILLIRON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | Civil Action No. 08-04149 (JLL) (ES)<br><br><br>**FIRST AMENDED**<br>**CLASS ACTION COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL** |

Plaintiff Debbie Milliron, individually and on behalf of others similarly situated, complains against defendant T-Mobile USA, Inc. ("T-Mobile" or "Defendant"), upon personal knowledge as to herself and own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by their attorneys, as follows:

## OVERVIEW OF THE ACTION

1.      Plaintiff brings this action individually and on behalf of all others similarly situated, to redress Defendant's wrongful practice of imposing early termination fees on its customers, which are unlawful penalties.

2.      The proposed classes consist of all consumer subscribers who had cell phone accounts with Defendant and whose contracts contain an early termination fee provision (also called an Early Termination Fee or Early Cancellation Fee, collectively, "ETF") or who have been charged an early termination fee by Defendant.

3.      Through a uniform scheme and common course of conduct, Defendant charged Plaintiff and other customers ETFs of $200.00 per handset if they cancelled their wireless service at any time after a trial period but before the end of the "service plan" term, regardless of the reason(s) for cancellation, which could include poor or nonexistent service (including, for example, because a consumer is unable to obtain wireless service in certain locations as needed).

4.      The amount of the ETF imposed does not vary during the term of the service plan. The customer is required to pay the full ETF whether he or she cancels two months after the service plan goes into effect or one day before the date it is scheduled to expire.

5.      As alleged herein, Defendant's conduct gives rise to Plaintiff's claims, including but not limited to any and all actions, causes of action, claims, demands, liabilities, obligations, damage claims, restitution claims, injunction claims, declaratory relief claims, fees (including attorneys' fees), costs, sanctions, proceedings and/or rights of any nature and description whatsoever, whether legal or equitable, including, without limitation, violations of any state or federal statutes and laws, rules or regulations, including but not limited to those enumerated herein: (1) violation of the Federal Communications Act; (2) violation of the substantially similar

Consumer Protection laws of all United States; (3) unjust enrichment, and (4) Declaratory Relief pursuant to 28 U.S.C. § 2201.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). This is a class action involving more than 100 class members. At least one member of the class is a citizen of a State different from defendants, and the amount in controversy, in the aggregate, exceeds the sum of $5,000,000.00 exclusive of interest and costs.

7.     Venue is proper under 28 U.S.C. § 1391. Defendant conducts substantial business in this District. Defendant is licensed to conduct business in the State of New Jersey and transacted business, committed an illegal act in, maintained agents or representatives in, or was found in this District. Defendant regularly and continuously conducts business in interstate commerce that is carried out in part in this District.

## PARTIES

8.     Plaintiff Debbie Milliron is a citizen of California residing at 680 Trail View Ct, Upland, California, who was charged a $200 ETF by T-Mobile.

9.     Defendant T-Mobile USA, Inc. ("Defendant" or "T-Mobile") is a Delaware corporation with its principal place of business in Bellevue, Washington. T-Mobile maintains stores throughout New Jersey.

## FACTS
### Early Termination Fees

10.     Defendant requires customers to abide by a standard wireless customer service agreement ("Agreement").

11.     Defendant distributes the Agreement on a preprinted, standardized form that is not subject to modification or negotiation, or, if the consumer is shopping on the Internet, through

read-only screens that cannot be modified by users; Defendant presents the Agreement to prospective subscribers on a "take it or leave it" basis.  The Agreement is a contract of adhesion.

12.     Defendant's Agreement includes, as a term and condition of service, a purported liquidated damages clause that requires subscribers to pay an early termination fee ("ETF") of $200 per handset if, for any reason, they seek to terminate service before the expiration of the contract period, which is typically one or two years.

13.     The ETF is also due if Defendant terminates the agreement for, among other things, nonpayment by the customer.

14.     Furthermore, the customer must pay the ETF even if cancellation is the result of non-existent, poor, or otherwise inadequate service.

15.     The specified penalty levied by Defendant against customers terminating service before the expiration of a specified term is $200.00 per line.

16.     The ETF does not vary during the term of the contract.  Defendant imposes the full penalty whether the customer cancels fifteen calendar days into the contract or one day before the date it is scheduled to expire.

17.     The ETF is not a reasonable measure of the anticipated or actual loss, if any, that the termination causes Defendant.

18.     The ETF is not designed to compensate Defendant for damages, if any, arising from the early termination, but rather is designed to serve as a disincentive for customers to switch to competing services in the event that they become dissatisfied with the services provided by Defendant.

19.     If and to the extent that Defendant suffers any damage upon early termination of a customer's contract, it is neither impracticable nor extremely difficult to measure or estimate the

-4-

actual damage. Further, if and to the extent Defendant suffers any damage upon early termination of a service contract, the flat-fee ETF of $200 per handset is not a reasonable measure or estimation of such damages.

20.     In addition to serving as a deterrent to customers from entering into contracts with competing wireless service providers, another purpose of the ETF is, apparently, to recoup equipment costs.  This admission was recently made by the Cellular Telecommunications and Internet Association (CTIA), an international association that represents the wireless communication industry, of which Defendant is a member.  In a filing with the FCC, CTIA stated:  "The longer assured commitment under these term contracts enables the carriers *to reduce handset prices* at the inception of the term and to reduce monthly service charges, based on the expectation that initial and ongoing costs can be recouped gradually over time."[1]

21.     Defendant disguises a fee to recover equipment costs and prevent customer defection as a liquidated damages clause, which is an illegal penalty when damages are readily calculable, as they are here, and when the charge bears no reasonable relationship to the anticipated harm in the event of a breach by the other party.  The ETF is neither designed nor intended to compensate Defendant for any damages arising from the termination, but has the effect and purpose of locking in subscribers and discouraging them from switching to competing services (what is known as "churn").

22.     Defendant's ETF stifles competition in the wireless industry by preventing consumers from freely shopping around for the best wireless service.

---

[1]     "Petition of the Cellular Telecommunications and Internet Association for an Expedited Discovery Ruling," page 15, March 15, 2005, FCC, WT-05-194 (emphasis added).

23.    The ETF is not a rate charged, nor is it part of Defendant's rate structure, nor is it a rate component charged for any "service."  It is part of the "Terms and Conditions" and can only be categorized as an illegal and void penalty provision that constitutes an unjust, unconscionable, unlawful, unfair and deceptive practice under applicable law.

24.    Furthermore, Plaintiff is informed and believes that any request for a change in service can only be granted with a renewal of the initial contract term, thereby extending the service contract an additional year (or two years) as of the date of the modification.  This required extension further discourages Plaintiff and members of the ETF Classes (as defined herein) from exploring other service options, changing their service to obtain lower prices or otherwise modify their plan because it reinstates early termination penalties.

25.    Plaintiff is informed and believes that many if not the majority of Defendant's customers are locked into customer service agreements beyond the initial one- or two-year period, at which point Defendant no longer needs to purportedly "recover" alleged customer acquisition costs.

26.    Plaintiff is informed and believes that the early termination penalty provisions have permitted Defendant to collect revenues and generate enormous profits as a result of:  (a) the payment of the early termination penalties; and (b) the revenue generated by tethering Plaintiff to service for at least the original contract period, and, in most cases, for additional years.[2]

---

[2]    At the Yankee Group wireless conference in New York in June of 2006, Verizon's Chief Executive, Denny Strigl, announced that it would pro-rate its termination fees, stating "complaints on this issue [ETFs] [are] the single largest that our customers have. . . .It's a legitimate complaint: If they leave in month one or month 23, [customers] pay the same charge." Strigl further referred to ETFs as a "black eye" on the cellular industry. *Verizon to ease termination fees,* Bruce Myerson, June 28, 2006, http://www.msnbc.msn.com/id/13600607/

**Facts As To Plaintiff**

27.     Plaintiff Debbie Milliron activated her account with T-Mobile on January 3, 2004. She subsequently cancelled, and was subsequently charged a $200 ETF.

28.     Plaintiff Milliron refused to pay the unlawful ETF, and T-Mobile has referred the outstanding charge to collections.

**No Enforceable Agreement To Arbitrate**

29.     Defendant has inserted clauses into its "terms and conditions" that purport to impose mandatory arbitration and/or waive the right to pursue a class action.  However, these terms and conditions constitute contracts of adhesion insofar as they are drafted entirely by the Defendant on a take-it-or-leave-it basis in a setting in which disputes between the contracting parties predictably involve small amounts of damages.  Plaintiff had neither the bargaining power nor the ability to change the contractual terms.  Defendant relies on purported mandatory arbitration provisions to absolutely shield them from civil liability.  In practice, the waivers virtually immunize the defendants from responsibility for their own wrongful conduct. Moreover, even though the clauses may "provide" for payment of attorney fees in arbitration if the claimant is successful, in practice these clauses still prevent consumers from obtaining adequate representation.  Such waivers are unconscionable under the law of this Circuit and state laws, and should not be enforced.

30.     Similar mandatory class action waivers provisions have been held unenforceable. *See, e.g.*, *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1 (NJ 2006); *Ting v. AT&T Corp.*, 319 F.3d 1126 (9th Cir. 2002), *cert. denied*, 540 U.S. 811 (2003); *Discover Bank v. Superior Cour*t, 36 Cal.4th 148 (2005); *Kinkel v. Cingular*, 223 Ill.2d 1 (Ill. 2006); *compare*

-7-

*Zobrist v. Verizon Wireless*, 354 Ill.App.3d 1139 (Ill. App. Ct. 2004) (granting motion to compel arbitration, but modifying arbitration clause to permit class-wide arbitration).

31.     The delay incurred by these motions imposes unnecessary and burdensome costs on customers who assert meritorious claims, and ultimately discourages customers from pursuing their legal rights.  *See, e.g.*, *Ting*, 319 F.3d 1126.

32.     On information and belief, Defendant does not use arbitration to resolve their own claims against a customer.  Instead, it resolves scores of claims against customers by assigning them to collection agencies who then pursue a variety of means to resolve them, including filing lawsuits, but not arbitration.

<div align="center">

**CLASS ACTION ALLEGATIONS**

</div>

**A.      Definition of the Class**

33.     Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below, the ETF Classes, of which Plaintiff is a member:

> The ETF Assessed Class:
>
> All persons in the United States who were parties to a contract for a wireless telephone personal account and were billed a Flat-Rate ETF by T-Mobile and/or its legacy companies from July 23, 19999 until February 19, 2009.  The ETF Assessed Class includes such persons whether or not they paid any portion of the ETF, whether to T-Mobile, any outside collection agency, or other third party to whom T-Mobile has assigned the rights to the ETF.

> The Subscriber Class:
>
> All persons in the United States who were or are parties to a contract for a wireless telephone personal account with T-Mobile that included or includes a provision for a Flat-Rate ETF from July 23, 1999 until February 19, 2009, and who have not paid or been billed a Flat-Rate ETF.

**B.     Numerosity**

34.     At this time, Plaintiff does not know the exact size of the ETF Classes; however, due to the nature of the trade and commerce involved, Plaintiff believes that members of the ETF Classes are so numerous that joinder of all members is impracticable.  The number of class members can be determined through appropriate discovery.

**C.     Commonality**

35.     There are questions of law or fact common to the ETF Classes, including at least the following:

(a)     Whether the ETF is an unlawful penalty;

(b)     Whether Defendant's conduct violated the Federal Communications Act;

(c)     Whether Defendant charged Class members ETFs;

(d)     Whether the ETF is unjust;

(e)     Whether Defendant's conduct constitutes deceptive, unfair and/or oppressive conduct;

(f)     Whether Defendant is/was unjustly enriched;

(g)     Whether Defendant intended the ETF to: (a) tether clients to it; and/or (b) subsidize the cost of cellular telephones purchased by Plaintiff and the Class from Defendant;

(h)     Whether Declaratory Relief is appropriate; and

(i)     Whether Plaintiff and the Class have been damaged, and if so, the proper measure of such damages.

**D.     Typicality**

36.     Plaintiff has the same interests in this matter as all other members of the class, and her claim is typical of all members of the class.

### E.       Adequacy

37.       Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions.  Plaintiff will fairly and adequately represent the interests of the members of the ETF Classes and does not have interests adverse to the ETF Classes.

### F.       The Prerequisites of Rule 23(b)(2) are Satisfied

38.       The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the ETF Classes thereby making appropriate final injunctive and equitable relief with respect to the ETF Classes as a whole.

39.       The prosecution of separate actions by members of the ETF Classes would create a risk of establishing incompatible standards of conduct for Defendant.  For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal.  Individual actions may, as a practical matter, be dispositive of the interest of the ETF Classes, whose members would not be parties to those actions.

40.       Defendant's actions are generally applicable to the ETF Classes as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the ETF Classes as a whole.

41.       Defendant's systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

### G.       The Prerequisites of Rule 23(b)(3) are Satisfied

42.       This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual

members of the ETF Classes, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the ETF Classes will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual member of the ETF Classes. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the ETF Classes defined above.

<u>COUNT I</u>
**(Violation of § 201 of the Federal Communications Act)**

43.     Plaintiff repeats the allegations contained in Paragraphs 1-42 as if fully set forth herein.

44.     This Count is asserted by Plaintiff individually and on behalf of the ETF Classes, as defined herein.

45.     At all times relevant hereto there was in full force and effect the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 201 *et seq.*

46.     Defendant is a common carrier engaged in interstate or foreign communication by wire or radio, and subject to the common carrier regulation set forth at 47 U.S.C. § 201, *et seq.*

47.     Defendant's termination penalties, described above, are charges and/or practices in connection with communication service, subject to the requirements of 47 U.S.C. § 201(b).

48.     Section 201(b) of the FCA provides that all charges, practices, classifications, and regulations for and in connection with communication service, shall be just and reasonable. 47 U.S.C. § 201(b).

49.     Defendant's ETF is unjust, unreasonable and/or unlawful under Section 201(b).

-11-

50.    As a direct and proximate result of Defendant's violation of 47 U.S.C. §§ 201(b)

described above, Plaintiff and the Class have been damaged.

<div align="center">

**COUNT II**
**(Violation of Consumer Protection Acts)**

</div>

51.    Plaintiff repeats the allegations contained in Paragraphs 1-50 as if fully set forth

herein.

52.    This Count is asserted by Plaintiff individually and on behalf of the ETF Classes,

as defined herein.

53.    Plaintiff brings their statutory fraud claims pursuant to the substantially similar

Consumer Fraud Acts of all United States, all of which were enacted and designed to protect

consumers against unfair, deceptive and/or fraudulent business practices.  *See, e.g.,* N.J.S.A. §

56:8-1 *et seq.*[3]    These Consumer Protection Acts are modeled after the FTC's consumer

protection provisions and are collectively referred to herein as "Consumer Acts."

---

[3]    Ala. Code § 8-19-1 *et seq.* (Alabama); Alaska Stat. § 45.50.471 *et seq.* (Alaska); Ariz. Rev. Stat. Ann. § 44-1521 *et seq.* (Arizona); Ark. Code Ann. § 4-88-101 *et seq.* (Arkansas); Cal. Civ. Code § 1671, Cal. Bus. & Prof. Code § 17200 *et seq.,* Cal. Bus. & Prof. Code § 17500 *et seq.,* Cal. Civ. Code § 1750 *et seq.* (California); Colo. Rev. Stat. § 6-1-105 *et seq.* (Colorado); Conn. Gen. Stat. § 42-110a (Connecticut); Del. Code Ann. Tit. 6, § 2511 *et seq.* (Delaware); D.C. Code Ann. § 28-3901 *et seq.* (District of Columbia); Fla. Stat. Ann, § 501.201 et seq. (Florida); Ga. Code Ann. § 10-1-390 *et seq.* (Georgia); Haw. Rev. Stat. § 481A-1 *et seq.* and Haw. Rev. Stat. § 480-1 *et seq.* (Hawaii); Idaho Code § 48-601 *et seq.* (Idaho); Kan. Stat. Ann § 50.623 *et seq.* (Kansas); Ky. Rev. Stat. § 367.11.0 *et seq.* (Kentucky); La. Rev. Stat. Ann. § 51:1401 *et seq.* (Louisiana); Me. Rev. Stat. Ann. Tit. 5, § 205-A *et seq.* (Maine); Md. Com. Law Code Ann. § 13-101 *et seq.,* Md. Corn. Law Code Ann. § 13-301 *et seq.,* Md. Corn Law Code Ann, § 13-408 *et seq.* (Maryland); Mass Gen. L. ch. 93A (Massachusetts); Mich. Stat. Ann. § 445.901 *et seq.,* Mich. Stat. Ann, § 19.418(1) *et seq.* (Michigan); Minn. Stat. § 325F.68 *et seq.,* Minn. Stat. § 8.31 (Minnesota); Miss. Code Ann. § 75-24-3 *et seq.* (Mississippi); Mo. Rev. Stat. § 407.010 *et seq.* (Missouri); Mont. Code Ann. § 30- 14-101 *et seq.* (Montana); Neb. Rev. Stat.§ 59-1601 *et seq.* (Nebraska); Nev. Rev. Stat. § 41.600 and Nev. Rev. Stat. § 598.0903 *et seq.* (Nevada); N.H. Rev. Stat. Ann. § 358:1 *et seq.* (New Hampshire); N.J. Rev. Stat. § 56:8-1 *et seq.,* N.J. Rev. Stat. § 56:12-1 *et seq.* (New Jersey); N.M. Stat. Ann. § 57-1.2-1 *et seq.* (New Mexico); N.Y. Gen. Bus. Law. § 349 *et seq.* (New York); N.C. Gen. Stat. § 75-1 *et seq.* (North Carolina); N. D. Cent. Code § 51-15-01 *et seq.* (North Dakota); Ohio Rev. Code Ann. § 1345.01 *et seq.* (Ohio); Okla. Stat. Tit. 15, § 751 *et seq.* (Oklahoma); Ore. Rev. Stat. § 646.605 *et seq.*

54.     For example, New Jersey's Consumer Fraud Act (N.J.S.A. § 56:8-2) provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice

55.     At all relevant times, Plaintiff, Class members and T-Mobile were "persons" within the meaning of the Consumer Acts, *see e.g.*, N.J.S.A. § 56:8-1.

56.     The imposition of an ETF is an act or practice in the conduct of trade or commerce.

57.     The imposition of an ETF impacts the public interest.

58.     The imposition of an ETF is deceptive because T-Mobile describes it as a liquidated damages clause and states that its damages are difficult or impracticable to calculate, when, in fact, it is a charge to tether the customer to Defendant and/or recover the cost of equipment. T-Mobile's damages, if any, are in fact quite simple to calculate and/or recover.

59.     The imposition of an ETF is unfair because it is imposed even when T-Mobile fails to properly provide class members with the wireless cellular services for which they contracted (as reflected in T-Mobile's own records); while class members are always at risk of breach, T-Mobile is never at risk of breach.

---

(Oregon); Penn. Stat. § 201-1 *et seq.* (Pennsylvania); Laws of P. R. Ann. Tit. 10, § 259 *et seq.* (Puerto Rico); R.I. Gen. Laws § 6-13.1:1 *et seq.* (Rhode Island); S.C. Code Ann. 39-5-10 *et seq.* (South Carolina); S.D. Codified Laws Ann. 37-24.1 *et seq.* (South Dakota); Tenn. Code Ann. § 47-18-101 *et seq.* (Tennessee); Tex. Bus. & Comm. Code Ann. § 17.41 *et seq.* (Texas); Vt. Stat. Ann. Tit. 9, § 2451 *et seq.* (Vermont); Va. Code Ann. § 59.1-196 *et seq.* (Virginia); Wash. Rev. Code § 19.86.010 *et seq.* (Washington); W.Va. Code § 46A-6-101 *et seq.* (West Virginia); and Wyo. Stat. § 40;12-101 *et seq.* (Wyoming).

60.     The imposition of an ETF is further unfair because it is imposed even when T-Mobile does not suffer any damages (as reflected in their own records) from a class member's early cancellation.

61.     The ETF is an illegal penalty and is unfair because it offends public policy; is so oppressive that the consumer has little alternative but to submit (*e.g.*, defendants turn "delinquent" accounts over to collections and negatively impact consumers credit history); and causes consumers substantial injury.

62.     Plaintiff and members of the ETF Classes suffered economic injury as a direct and proximate result of T-Mobile's conduct, including but not limited to the amount of the ETFs improperly charged.

63.     Defendants committed deceptive acts or practices within the meaning of the Consumer Acts by engaging in the acts and practices alleged herein.

## COUNT III
### (Declaratory Relief Pursuant To 28 U.S.C. § 2201)

64.     Plaintiff repeats the allegations contained in Paragraphs 1-63 as if fully set forth herein.

65.     This Count is asserted by Plaintiff individually and on behalf of the ETF Classes, as defined herein.

66.     There is an actual controversy between T-Mobile and the ETF Classes concerning the enforceability of the early termination fee provisions contained in the customer service agreements to which they are all parties.

67.     Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

68.     Plaintiff is an interested party who seeks a declaration of her rights and legal relations vis-à-vis T-Mobile with regard to early termination fee provisions contained in the customer service agreements to which they are all parties.

69.     T-Mobile's ETF is an unlawful penalty in that it purports to be a liquidated damages clause when, in fact, the ETF is not a reasonable estimate of the harm T-Mobile might incur in the event that the customer were to breach his or her customer service agreement.

70.     Moreover, the ETF is chargeable to the customer even if the customer service agreement is terminated by T-Mobile as a result of a breach by T-Mobile.  Thus, regardless of the reason for the termination of the customer service agreement or the fault of the parties, the customer is subject to being charged an ETF.

71.     Plaintiff and the members of the ETF Assessed Class who were charged and who paid an ETF to T-Mobile have been damaged because they paid a charge which was not legally due and owing.

72.     Plaintiff and the members of the ETF Assessed Class who where charged and who did not pay an ETF to T-Mobile have also had their credit damaged because T-Mobile has reported that a debt is owing from such persons when, in fact, no debt is due and owing.

## COUNT IV
### (Unjust Enrichment)

74.     Plaintiff repeats the allegations contained in Paragraphs 1-73 as if fully set forth herein.

75.     This Count is asserted by Plaintiff individually and on behalf of the ETF Class, as defined herein.

76.     Defendant received and retained a benefit conferred by Plaintiff and members of the ETF Classes at their expense through the imposition and collection of ETFs.

-15-

77.     As hereinabove alleged, T-Mobile has benefited unjustly at Plaintiff's and members of the ETF Classes expense, which in equity and good conscience, T-Mobile should not be permitted to retain.

78.     Plaintiff and members of the ETF Classes have no adequate remedy at law because of T-Mobile's conduct.

79.     As a direct and proximate result of T-Mobile's unjust enrichment, Plaintiff and members of the ETF Classes have suffered non-monetary and monetary injury.

80.     Plaintiff, on behalf of herself and the ETF Classes, is entitled to restitution from T-Mobile and an order to ameliorate all ETF credit-related dunning and for the disgorgement of all ETF profits, benefits, and other compensation obtained by T-Mobile for its wrongful conduct.

WHEREFORE, Plaintiff, individually and on behalf of the ETF Classes of persons described herein, prays for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(2) (and/or (b)(3)), and certifying the Class defined herein;

B.     Designating Plaintiff as representative of the ETF Classes and counsel as ETF Classes counsel;

C.     Entering judgment in favor of Plaintiff and the ETF Classes and against T-Mobile;

D.     A declaration that the early termination fee violates the consumer fraud laws of the Consumer Fraud Acts of certain states, as defined herein;

E.     Preliminary and permanent injunctive relief enjoining Defendant from engaging in all deceptive, unjust, and unreasonable practices described herein;

F.     Awarding Plaintiff and the ETF Classes Members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

G.     Granting such further relief as the Court deems just.

-17-

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attorneys for Plaintiff

By:     /s/ James E. Cecchi
          JAMES E. CECCHI

Dated: March 19, 2009

Stephen A. Weiss
Jonathan Shub
SEEGER & WEISS LLP
550 Broad Street
Newark, New Jersey 07102

Paul M. Weiss
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all claims so triable.

<div style="margin-left: 50%;">

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attorneys for Plaintiff

By:   /s/ James E. Cecchi
     JAMES E. CECCHI

</div>

Dated: March 19, 2009

Stephen A. Weiss
Jonathan Shub
SEEGER & WEISS LLP
550 Broad Street
Newark, New Jersey 07102

Paul M. Weiss
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000