# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBBIE MILLIRON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>T-MOBILE USA, INC.,<br><br>        Defendant. | Civil Action No. 08-4149(JLL) |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## FINAL APPROVAL OF PROPOSED SETTLEMENT

---

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN,
 CECCHI, STEWART & OLSTEIN
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
Jeffrey Leon
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Class Counsel

Stephen A. Weiss
Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, Pennsylvania 19102

# **TABLE OF CONTENTS**

Table Of Authorities ...............................................................................................ii

Preliminary Statement...........................................................................................1

Procedural Background..........................................................................................2

    A.    The Early Termination Fee ................................................................2

    B.    The Terms of the Settlement..............................................................3

    C.    Procedural Landscape ........................................................................4

Legal Argument .....................................................................................................5

Point One    The Settlement Class Should Be Certified..........................................5

    A)    The Requirements Of Fed. R. Civ. P. 23(A) Are Satisfied..................5

        1)    Numerosity ...........................................................................6

        2)    Commonality .........................................................................6

        3)    Typicality ..............................................................................7

        4)    Adequacy Of Representation .................................................7

    B)    The Settlement Meets The Requirements Of Fed. R. Civ. P. 23(b)(3)......................10

        1)    Common Questions of Law and Fact Predominate .........................................11

        2)    A Class Action Is Superior To Numerous Individual Actions ....................11

Point Two    The Settlement Is Fair, Reasonable And Adequate ..................................................14

    A)    Standards For Approval Of Class Action Settlement .................................................14

    B)    The Settlement Is Fair, Reasonable And Adequate ...................................................16

        1)    Continued Litigation Would Be Long, Complex And Expensive .................16

        2)    The Reaction Of The Class Is Virtually Unanimous In Favor Of The Proposed Settlement .......................................17

3)      The Parties Have Completed Extensive
Pre-Complaint Investigation And Document Discovery ............................21

4)      Plaintiffs Face Considerable Risk In Proceeding to Trial.............................23

5)      The Risks Of Maintaining The Class Action Through Trial ........................25

6)      Defendant's Ability To Withstand Greater Judgment,
And Reasonableness of The Settlement In Light
Of The Best Possible Recovery And All Attendant Risks Of Litigation.......25

Conclusion ....................................................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30 (3d Cir. 1971) .................................... 14

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 8, 12

*Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) ....................................................... 7

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) .............................................................. 23

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) ............................................................ 15, 17

*Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994),
    *aff'd without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) .......................... 23

*Carnegie v. Household International, Inc.*, 376 F.3d 656 (7th Cir. 2004) ..................................... 13

*Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001) ............................................................... 23

*Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641 (N.D. Tex. 1978),
    *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980) ................................................... 25

*Danvers Motor Co. Inc. v. Ford Motor Co.*, 543 F.3d 141 (3d Cir. 2008 ....................................... 7

*DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171 (8th Cir. 1995) .......................................................... 19

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ..................................................... 18

*Education Station Day Care Center, Inc. v. Yellow Book USA, Inc.*,
    2007 WL 1245971 (N.J. Super. 2007) .......................................................................... 9

*Eggleston v. Chi. Journeyman Plumbers Local Union No. 130 U.A.*,
    657 F.2d 890 (7th Cir. 1981) .................................................................................. 25

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) ........................................................................ 6

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ................................................................. 14, 21, 23

*Grasty v. Amalgamated Clothing and Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987) ...... 10

*Handschu v. Special Services Div.*, 605 F.Supp. 1384 (S.D.N.Y. 1985) ...................................... 23

*Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988) .......................................................................... 6, 8

*In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228 (5th Cir. 1982) ................................... 23

*In re Corrugated Container Anti-Trust Litigation*, 643 F.2d 195 (5th Cir. 1981) ....................... 23

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) ............................ 25

*In re Lloyd's Amer. Trust Fund Litig.*, 2002 WL 31663577 (S.D.N.Y. 2002) ................................ 9

*In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D 180 (D.N.J. 2003) ............................................ 11

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) ........ 6, 10, 14

*In re Prudential Ins. Co. of America Sales Practice Litig.*,
    962 F.Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ...................... 5, 10, 19

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ..................................... 6, 26

*In re: Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011 (D.N.J. 2005) .......... 18

*Lake v. First Nationwide Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) ............................................. 16

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999) .................................................... 14, 22

*Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558 (3d Cir. 1989) ..................................................... 24

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................ 16

*Phillips Petroleum Co. v. Schutts*, 472 U.S. 797 (1985) .............................................................. 12

*River Road Associates v. Chesapeake Display and Packaging Co.*,
    104 F.Supp.2d 418 (D.N.J. 2000) ............................................................................ 24

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D.Tex. 2000) ........... 9

*Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309 (S.D.N.Y. 1978) .......................................... 16

*Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115 (3rd Cir. 1990) ...................................................... 17

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003).....................8

*Varcallo v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ........................ 12

*Vargas v. Calabrese,* 634 F. Supp. 910 (D.N.J. 1986) .................................................................. 6

*Walsh v. Great Atl. & Pac. Tea Co.,* 726 F.2d 956 (3d Cir. 1983)......................................... 10, 14

*Waudby v. Verizon Wireless Services LLC*, 148 F.R.D. 173 (D.N.J. 2008) ................................. 10

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982). .................................................................. 24

*Weiss v. Mercedes-Benz of North America,* 899 F. Supp. 1297 (D.N.J. 1995) ......... 15, 18, 22, 23

*Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir. 1983) ....................................................................... 6

*Welch v. Bd. of Dirs. of Wildwood Golf Club*, 146 F.R.D. 131 (W.D. Pa. 1993).......................... 6

*West Virginia v. Chas. Pfizer & Co.,*
      314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971)........... 23

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975)........................................................ 6

*Zinberg v. Wash. Bancorp, Inc.,* 138 F.R.D. 397 (D.N.J. 1990) ............................................... 6, 7

**RULES**

Fed.R.Civ.P. 23 ................................................................................................................... passim

**TREATISES**

MANUAL FOR COMPLEX LITIGATION, THIRD § 30.43 (1995) ....................................................... 15

## PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff respectfully submits this memorandum in support of their motion for final approval of the proposed $13.5 million dollar settlement (the "Settlement") pursuant to the terms and conditions of the Stipulation and Settlement Agreement dated February 5, 2009 between Plaintiff and Defendant T-Mobile USA ("T-Mobile").  The Settlement provides reasonable, comprehensive and robust relief to the Class and far surpasses the approval requirements of Rule 23.  The reasonableness of the settlement is highlighted by the fact that, while direct mail notice was disseminated to over 1 million Class members, only ten Class members, less than 0.001% of the Class, have objected to its terms.

The Settlement is the product of hard fought, arms-length mediation and negotiation, including mediation under the direction of the Honorable Douglas Wolfson (ret.).  The Settlement represents a manifestly successful outcome for the Class, and provides significant relief to T-Mobile customers in difficult times.  The Settlement also provides global peace to T-Mobile over Early Termination Fee claims.  It should, respectfully, be finally approved.

## PROCEDURAL BACKGROUND

### A.      The Early Termination Fee

An Early Termination Fee ("ETF") is a standard feature in cellular telephone customer contracts.   Generally, cellular telephone contracts have a one- or two-year duration.   If the customer terminates his contract before its term, he is charged an ETF.   The purpose of the ETF, according to the carriers, is to reimburse the carrier for the cost of the free or reduced-price phone the customer generally receives at the beginning of the contract, plus the costs associated with obtaining and initiating new customers and with customers terminating service, known in the industry as "churn."   The carriers anticipate that the subsidy for the telephone and "churn" expenses will be recovered over the length of the contract, so that if the customer terminates his contract before the end of the term, the carrier does not recover those costs.   Consumer advocates, though, argue that the ETF is intended to discourage customers from changing carriers, since the ETF is charged regardless of the reason the customer terminated the contract, such as, because the carrier provided poor service.

Prior to 2007, when Verizon first introduced a pro-rated ETF, all cellular telephone service providers charged a flat-rate ETF of, generally $175 or $200, regardless of when the customer terminated his contract.   Thus, a customer terminating in the first month of a two-year contract would pay the same amount as a customer terminating in the twenty-fourth month of his contract, even though the carrier would have suffered considerably less economic harm from the customer terminating in the twenty-fourth month than the customer terminating in the first month.   Because of this fact, and the perception that the ETF was really intended to discourage customers from switching carriers, class action litigation sprung up, beginning in 2002 and 2003, around the country against the major national wireless carriers, Verizon, AT&T, Sprint and T-Mobile.

The primary theory in these actions is that the ETF was not a liquidated damages clause but an unenforceable penalty, which violated the Federal Communications Act, state consumer protection laws, and unjust enrichment principles.

**B.     The Terms of the Settlement**

Under the terms of the Settlement, T-Mobile will pay a total of $13.5 million to the Class, consisting of $11.5 million in cash and $2.0 million in non-cash benefits such as bonus minutes, bonus text messages, and free access to T-Mobile's wireless network.  The Settlement fund will be used to pay class member's claims, court-awarded attorneys' fees and costs associated with the prosecution of these claims, as well as the notice and other administration costs of the settlement.  In the event claims to be paid out of the fund exceed the available cash in the fund, cash benefits will be reduced in *pro rata* proportion.  Conversely, any cash left in the Settlement Fund at the close of the claim period will be converted into a *cy pres* award; *i.e.*, there will be no reversion to Defendant.

In addition to monetary relief, the Settlement provides important and valuable prospective relief to future customers, who are not in the Class.  In particular, Defendant agreed as part of the Settlement to implement a pro-rated ETF system that eliminates the fundamental inequity of the flat-rate system.  T-Mobile has already implemented this system and does not write flat-rate ETF contracts at this time.  If approved, the Settlement would enjoin T-Mobile from implementing new flat-rate ETFs for two years.

Further, as part of the settlement, T-Mobile agreed to permit any customer who is still subject to a flat-rate EFT to convert their contract to a prorated one (the "Proration Benefit").

C.      **Procedural Landscape**

In order to effectuate the settlement, the parties have agreed to seek certification of a settlement class (the "Class") under Fed.R.Civ.P. 23. The Class is defined in the Settlement Agreement and the parties have reserved all of their rights in the event the Settlement is rejected.

## LEGAL ARGUMENT

### POINT ONE

### THE SETTLEMENT CLASS
### SHOULD BE CERTIFIED

Class actions certified for the purposes of settlement are well-recognized under Fed.R.Civ.P. 23.  *See, e.g., In re Prudential Ins. Co. of America Sales Practice Litig.*, 962 F.Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).  Class Counsel submits that the Court was correct in preliminarily certifying the Classes for settlement purposes pursuant to Rules 23(a) and 23(b)(2) and (b)(3), and that the following Classes should now be finally certified:

> **The ETF Assessed Class:**
> All persons in the United States who were parties to a contract for a wireless telephone personal account and were billed a Flat-Rate ETF by T-Mobile and/or its legacy companies from July 23, 19999 until February 19, 2009.  The ETF Assessed Class includes such persons whether or not they paid any portion of the ETF, whether to T-Mobile, any outside collection agency, or other third party to whom T-Mobile has assigned the rights to the ETF.

> **The Subscriber Class:**
> All persons in the United States who were or are parties to a contract for a wireless telephone personal account with T-Mobile that included or includes a provision for a Flat-Rate ETF from July 23, 1999 until February 19, 2009, and who have not paid or been billed a Flat-Rate ETF.

**A)      The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied**

The four prerequisites of Rule 23(a) are that:

1.      the class be so numerous that joinder of all members is impracticable;

2.      there be questions of law or fact common to the class;

3.      the claims or defenses of the representative parties be typical of the claims or defenses of the class; and

4.      the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1983); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 246 n.7 (3d Cir. 1975).  As discussed below, in light of the proposed Settlement, Plaintiffs and the Class meet the requirements of Rule 23(a), which are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 527 (3d Cir. 2004).

### 1)  Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  Impracticability, however, does not mean impossibility.  *See, e.g.*, *Zinberg v. Wash. Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990); *Vargas v. Calabrese,* 634 F. Supp. 910, 918 (D.N.J. 1986).  In *Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985), the Third Circuit found the numerosity requirement satisfied where the proposed class consisted of "more than 90 geographically dispersed plaintiffs."  *See also Welch v. Bd. of Dirs. of Wildwood Golf Club*, 146 F.R.D. 131, 135 (W.D. Pa. 1993) (Third Circuit has generally held that the numerosity requirement is met if proposed class exceeds 100 members).

Here, joinder of all Class Members is impracticable because there are millions of Class Members, dispersed throughout the United States.  No one has claimed that this requirement is not satisfied.  Accordingly, the numerosity requirement is met.

### 2)  Commonality

Rule 23(a)(2) provides that a suit may be maintained as a class action if "there are questions of law *or* fact common to the class." (emphasis added).  Rule 23 does not require that all members of the class be identically situated, as long as there are substantial common questions of either law or fact.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 310 (3d Cir. 1998); *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1988).  Indeed, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of

fact or law with the grievances of the prospective class." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Because this requirement may be satisfied by the presence of a single common issue, it is "easily satisfied." *In re Prudential,* 148 F.3d at 310.

In this case, the commonality requirement is easily satisfied because common questions of law and fact exist as to all members of the Class. By way of example, the primary issue in the case, whether T-Mobile's flat-rate ETF is an unenforceable penalty, is a common question of law and fact shared by all Class members. Thus, since the claims of all Class Members arise from the same nucleus of operative facts and pursuant to the same legal theories, commonality is satisfied.

### 3)   Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." The typicality requirement is satisfied as long as the named Plaintiff and the Class "point to the same broad course of alleged fraudulent conduct to support a claim for relief." *Zinberg,* 138 F.R.D. at 401. Factual differences between class representatives and other members of the class do not preclude a finding of typicality so long as the plaintiffs' claims arise from the same event or course of conduct and are based on the same legal theory. *Danvers Motor Co. Inc. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008).

The named Plaintiff is typical of members of the Class because her claims are the same as those of other Class members: that T-Mobile charged her and the other Class members a flat-rate ETF which is alleged to be an unenforceable penalty, which was part of a standard form contract with all T-Mobile customers.

### 4)   Adequacy of Representation

A class representative is adequate if he or she had the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is

no conflict between the individual's claims and those asserted on behalf of the class. *Hassine*, 846 F.2d at 179. The adequacy of representation requirement tends to merge with the commonality and typicality criteria. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997). Here, Plaintiff is an "adequate" representative for the Class. She, like all members of the Class, was subject to an ETF. As a result of her efforts, all members receive benefits through the Settlement.

Objector Phee have alleges that Plaintiff Milliron is not adequate because she did not pay an ETF, and therefore cannot represent those who did pay a fee. (Phee Objection, Docket Entry 43, at 7) This objection is clearly baseless because it fails establish how that makes her in *fundamental* conflict with those who did pay an ETF. For to bar certification, any conflict must be "fundamental," and go to the specific issues in controversy. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). A fundamental conflict exists where some named party class members have been harmed by the same conduct that has benefitted other members of the class. *Id.* This is not such an instance. Rather, all class members have been harmed by the imposition of an allegedly unlawful ETF. All Class members benefit if T-Mobile's ETF were declared to be an unenforceable penalty and the creation of a common fund to make monetary payments from. All Class members share the same interest in that they seek to recover money paid to T-Mobile that they were not obligated to pay, or recover damages associated with the imposition of that charge.

The fact that substantial benefits were obtained in the settlement demonstrates Milliron's suitability. *See Amchem*, 521 U.S. at 620 (consideration of the settlement terms when examining the propriety of class certification is "altogether proper"). It cannot be disputed that Plaintiff, who was *charged* an ETF, achieved a settlement of significant value for those who *did* pay an ETF. According to the terms of the Settlement, Class Members who paid an ETF are entitled to

-8-

apply for a refund of up to over 60% ($125) of the $200 charge.  Class Members who were charged, but did not pay the ETF, are also entitled to monetary recovery.

Furthermore, Plaintiff Milliron is competent to represent the interests of Class Members who were subject to a flat-rate ETF, but were never charged.  *See, e.g.*, *Hedges Enters., Inc. v. Continental Group, Inc.*, 81 F.R.D. 461, 466 (E.D. Pa. 1979) ("The mere fact that a representative plaintiff stands in a different factual posture is not sufficient to refuse certification . . . the atypicality or conflict must be clear and must be such that the interests of the class are placed in significant jeopardy."); *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *30-31 (N.D. Cal. Jan. 26, 2007), *aff'd* 2009 U.S. App. LEXIS 10328 (9th Cir. May 14, 2009) (rejecting contention that "because each of the named plaintiffs is a former employee of defendants, the named plaintiffs might not be adequate representatives  of a class that includes both current and former UBS employees").  Milliron has secured for these Class Members substantial non-cash benefits, with an estimated available value of $2 million.[1]  Moreover, the option for current customers to convert their flat-rate ETFs to pro-rated ones is especially well-tailored to the claims of such Class Members.

---

[1]     That some of these benefits are non-cash does not negate their value, and the law is clear that settlement consideration may include both cash and non-cash benefits.  *In re Lloyd's Amer. Trust Fund Litig.*, 2002 WL 31663577, *16 (S.D.N.Y. 2002) (and cases cited therein).  Non-cash benefits are routinely given cash value and included in the result of the settlement, and "a class settlement can offer different benefits to differently situated class members, so long as it offers fair and adequate compensation to the class as a whole." *Education Station Day Care Center, Inc. v. Yellow Book USA, Inc.*, 2007 WL 1245971, *5 (N.J. Super. 2007); *Accord Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942, 960 (E.D.Tex. 2000) ("A settlement should not be disapproved simply because it contains an in-kind benefit component if the benefits are of real, economic value to the class members….[Non cash benefits] constitute real and quantifiable value to the class members and should be included in determining the total economic value provided to the class").

The real basis for this objection is dissatisfaction with the way the funds are allocated, but fundamental class antagonisms are not created by disputes over the division of settlement funds. *Walsh v. Great Atl. & Pac. Tea Co.,* 726 F.2d 956 , 964 (3d Cir. 1983). "Class action settlement benefits may be allocated by counsel in any reasonable or rational manner because "allocation formulas ... reflect the comparative strengths and values of different categories of the claim."" *In re Lloyd's*, 2002 WL 31663577 at *18. To hold otherwise "would place substantial burdens on the settlement process. The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Walsh*, 726 F.2d at 964. In every settlement, some class members get more benefit than others, and the class members who get less benefit of course want more. Objectors' theory of antagonism would crater every class action settlement. Again, such tiered recovery is perfectly appropriate and normal. *See In re Prudential Sales Practice Litigation*, 148 F.3d at 295. Plaintiff is therefore adequate.

Finally, Plaintiff counsel are adequate if they have demonstrated an assurance of vigorous prosecution of the case, which is equated with the competence and experience of class counsel. *Grasty v. Amalgamated Clothing and Textile Workers Union*, 828 F.2d 123, 129 (3d Cir. 1987); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 450. Here, Plaintiff's counsel have previously demonstrated themselves as being appropriate class counsel to represent an ETF litigation class, *Waudby v. Verizon Wireless Services LLC*, 148 F.R.D. 173, 175-77 (D.N.J. 2008), and many other national class actions. They are equally adequate to represent the Class in this ETF litigation, as was demonstrated by the credentials submitted to the Court in support of Counsel's motion to be appointed interim class counsel.

**B)**       **The Settlement Meets the Requirements of Fed. R. Civ. P. 23(b)(3)**

In addition to meeting the requirements of Rule 23(a), the Class also must satisfy Rule 23(b)(3), which states:

(b)     Class Actions Maintainable.   An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

* * *

(3)     the court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Rule 23(b)(3) is satisfied in this action because (i) questions of law or fact common to the Class members predominate over any questions affecting only individual Class members, especially in light of the proposed Settlement, which eliminates any individual issues, and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### 1)     Common Questions of Law and Fact Predominate

In determining whether common questions predominate, a court's inquiry is directed towards the issue of whether common questions predominate over individual issues. *Prudential*, 962 F.Supp. at 510-11.  Here, as set forth above, it is clear that for the purpose of certification of the Class for settlement, the same set of operative facts and a single proximate cause apply to each member of the Class, *i.e.*, that T-Mobile's flat-rate ETF is an unenforceable penalty.  If Plaintiff and each of the Class members were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability.

### 2)     A Class Action is Superior to Numerous Individual Actions

Rule 23(b)(3) sets forth certain factors that may be pertinent in considering whether a class action is a superior method by which to adjudicate a controversy.  *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D 180, 186 (D.N.J. 2003) ("The Rule sets forth a non-exhaustive list of factors to be weighed.").  The Rule provides that these factors include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigations of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

When certifying a settlement only class, the Court need not inquire whether the case, if tried, would pose intractable management problems, for the purpose of the settlement is to not have a trial. *Amchem*, 521 U.S. at 620. Moreover, "[f]or the purposes of settlement, concentrating litigation in one forum is desirable." *Varcallo v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 207, 234 (D.N.J. 2005).

A class action is superior to other available methods for the fair and efficient adjudication of this litigation within the meaning of Rule 23(b)(3) because (i) absent class action certification, the Court is faced with the potential burden of litigating numerous individual lawsuits, all of which would arise out of the same set of operative facts alleged in the Complaint; (ii) the resolution of common issues alleged in one action will both produce an efficient use of judicial resources and result in a single outcome that is binding on all Class Members; (iii) any administrative difficulties in handling potential individual issues under the class action device are less burdensome than the problems that are likely to arise in handling the same claims in numerous separate actions; and (iv) because of the expense of maintaining individual actions, denial of class certification here would effectively prevent certain individuals from asserting their claims against the Defendant. *See, e.g., Phillips Petroleum Co. v. Schutts*, 472 U.S. 797, 809 (1985) (class action plaintiffs' claims uneconomical to litigate individually); *Varacallo*, 226 F.R.D. at 234 ("Without question, class adjudication of this matter will achieve an appreciable savings of effort, time and expense, and will promote uniformity of decision on the issues resolved and to which the parties will be bound.").

Here, a class action would be the superior method of resolving the Plaintiff Class members' claims. All of the Class members' claims are based upon the same basic operative facts and legal standards. It would be a far better use of judicial resources to adjudicate all of these identical issues once, on a common basis, than repeatedly, literally millions of times. Resolving Class members' claims on an individual basis would be a *Groundhog Day* nightmare.

Most importantly, if the Class members' claims were asserted on an individual basis, the reality is that those claims would never be asserted in litigation. Class members' claims are, at best, worth $200 each, but the cost of adjudicating them properly would be thousands, if not hundreds of thousands of dollars each, thus making them, to use the class action lexicon, "negative-value claims." The only practical way to resolve millions of $200 claims is on a class basis. As Judge Posner observed in *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)

> The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30. . . . The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.

> Plainly, a class action is the superior method for adjudicating the Class members' claims.

None of the objectors have taken issue with this self-evident proposition.

<div style="text-align:center">

**POINT TWO**

**THE SETTLEMENT IS FAIR,**
**REASONABLE AND ADEQUATE**

</div>

In addition to satisfying the class certification requirements under Rule 23, a proposed settlement must be "fair, reasonable and adequate." *In re Prudential,* 148 F.3d at 316. "Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims." *Id.* For the reasons set forth below, the Settlement is fair, reasonable and adequate, and should be approved.

**A)      Standards For Approval Of Class Action Settlement**

Approval of a proposed class action settlement is a matter within the sound discretion of the court. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999). *See also Walsh.,* 726 F.2d at 965; *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30, 34 (3d Cir. 1971). In exercising that discretion, the Third Circuit has outlined a set of nine factors, generally referred to as the *Girsch* factors, to determine whether a settlement is fair, reasonable and adequate.

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action [through trial]; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*GM Trucks*, 55 F.3d at 785; *Girsh,* 521 F.2d at 157 .

There is a strong judicial policy in favor of resolution of litigation before trial. *GM Trucks*, 55 F.3d at 805. ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal

<div style="text-align:center">-14-</div>

litigation.").    When a settlement is reached on terms agreeable to all parties, it is to be

encouraged.  *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1314 n.16 (3d Cir. 1993).  This Court has

articulated the rationale for that policy as follows:

> [W]hen parties negotiate a settlement they have far greater control of their destiny
> than when a matter is submitted to a jury.  Moreover, the time and expense that
> precedes the taking of such a risk can be staggering.  This is especially true in
> complex commercial litigation.

*Weiss v. Mercedes-Benz of North America,* 899 F. Supp. 1297, 1300-01 (D.N.J. 1995).

Settlements enjoy a presumption that they are fair and reasonable when they are the

product of arm's-length negotiations conducted by experienced counsel who are fully familiar

with all aspects of class action litigation.  *GM Trucks,* 55 F.3d at 785 ("This preliminary

determination establishes an initial presumption of fairness when the court finds that:  (1) the

negotiations occurred at arm's length . . . (3) the proponents of the settlement are experienced in

similar litigation. . . ."); *see also* MANUAL FOR COMPLEX LITIGATION, THIRD § 30.43 (1995).

Thus, although a court must evaluate a proposed settlement, the court may rely on the judgment

of experienced counsel in doing so.

A fair, reasonable and adequate settlement is not necessarily an "ideal settlement."  A

settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty

and resolution."  *Prudential,* 962 F. Supp. at 534 (citations omitted).  As one court has noted:

> [T]he court's intrusion upon what is otherwise a private consensual agreement
> negotiated between the parties to a lawsuit must be limited to the extent necessary
> to reach a reasoned judgment that the agreement is not the product of fraud or
> overreaching by, or collusion between, the negotiating parties, and that the
> settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . .
> The proposed settlement is not to be judged against a hypothetical or speculative
> measure of what might have been achieved by the negotiators.
>
> *    *    *
>
> Neither the district court nor this court is empowered to rewrite the settlement
> agreed upon by the parties.  We may not delete, modify, or substitute certain

-15-

provisions of the consent decree.  Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted.  Approval must then be given or withheld. . . . In short, the settlement must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625, 630 (9th Cir. 1982).  *See also Lake v. First Nationwide Bank*, 900 F.Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that the settlement is in the best interest of the class.'") (citation omitted).

The *Girsch* factors and related settlement principles strongly favor approval of this settlement as fair, reasonable and adequate.

**B)** **The Settlement Is Fair, Reasonable And Adequate**

Each of the *Girsch* factors demonstrates that the Settlement is fair, reasonable and adequate, and should be approved because it achieves a substantial benefit for the Class without the further delay, risks and expense of continued litigation.

**1)** **Continued Litigation Would Be Long, Complex And Expensive**

The first *Girsh* factor is whether the settlement avoids a lengthy, complex and expensive continuation of litigation.  Courts consistently have held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a settlement.  *Lake*, 900 F. Supp. at 732 ("due to the relative complexity of the issues involved and the amount of data that would need to be processed, the costs of litigating this matter through trial would likely be high"); *Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309, 313 (S.D.N.Y. 1978).  *See also GM Trucks*, 55 F.3d at 812 (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlements, which offer immediate benefits and avoid delay and expense).

Here, due to the factual and legal complexities involved in this case, continued litigation necessarily would be extremely expensive and time-consuming.  It would require numerous depositions and extensive inquiry into T-Mobile's cost accounting methods and assumptions that would require the use of expensive accounting and economics expert witnesses.  Local practices in this District show that this case would take some time to bring to trial.[2]  Even if Plaintiff was successful, T-Mobile would undoubtedly appeal an adverse judgment, adding further time to a final resolution of this matter if it were litigated.  Under all of the circumstances, a certain result now rather than an uncertain result years in the future, weighs in favor of approval of the Settlement.

**2)      The Reaction Of The Class Is Virtually Unanimous In Favor Of The Proposed Settlement**

Although there are millions of class members, to date, there have been approximately 600 requests for exclusion, and ten objections filed, some of which were filed by the same counsel or coordinating counsel.  The opposition to the Settlement is therefore infinitesimal; it is less than 0.001% of the Class if you include just the direct mailing component of the notice program (which exceeded one million postcards to class members).  Such a small number of objections is a *Girsch* factor which favors approval of a class action settlement agreement.  *See Bell Atl.*, 2 F.3d at 1314 n.15 (silence is "tacit consent" to settlement); *Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3rd Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *Prudential*, 962 F.Supp. at 537 (small amount of negative responses to

---

[2]      The most recent statistics available, as of September 2007, indicate that, for cases which go to trial, the median time from filing to disposition in the District of New Jersey is 30.8 months.  http://www.uscourts.gov/judbus2007/contents.html Table C-5.

settlement favors approval); *Weiss,* 899 F. Supp. at 1301 (100 objections out of 30,000 class members weighs in favor of settlement).

The majority of the objections, including those submitted by Phee (Docket Entry 43), Carder, Lyons and Miller (Docket Entry 53), Haynes (Docket Entry 54), and Petrus (Docket Entry 57) complain that the recovery on behalf of the Class is generally inadequate, though do not state what they believe would be an adequate remedy.[3]  However, this is a settlement, and as discussed above, a settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Prudential,* 962 F.Supp. at 534 (citations omitted).  Class members who paid an ETF can receive over 60% of the $200 charge, assuming no pro ration of benefits is necessary, and Class members who were charged an ETF but did not pay it are entitled to recover $25, despite having no out-of-pocket costs.[4]  Current subscribers subject to flat-rate ETFs can convert them to prorated ones, or select from a variety of valuable non-cash

---

[3]      Phee and Carder, Lyons and Miller complain that the Settlement is inadequate because Class members need to file proofs of claim, which has nothing to do with the amount they are to receive.  (Phee Objection at 3-4; Carder, Lyons and Miller Objection at 4).  Moreover, these filing requirements are entirely acceptable.  *See In re: Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011, at *54 (D.N.J. 2005) (automatically distributing money to certain class members favors one group of class members over another and invites practical problems, "including those associated with blindly sending checks to addresses that may be outdated."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 314 (W.D. Tex. 2007) (approving claim forms that required detailed information from potential claimants).  Phee also objected to the information requested by the claim form, but, as the online form notes, an incomplete claim form "will still be considered and reviewed in full during the claims administration process." Online T-Mobile Early     Termination     Fee     Settlement     Claim     Form,     https://etf-settlement.com/Secure/OnlineClaimForm.aspx.  Other objections have little to do with the terms of the Settlement itself, and are essentially based on former subscribers' dissatisfaction with T-Mobile's service and the response to complaints about it.  *See* Anderssen (Docket Entry 42) and Van Bemmelen (Docket Entry 48).

[4]      It is worth noting that as of June 27, 2009, nearly 40,000 claims for benefits had been filed online.  (*See* Declaration of Joel K. Botzet Regarding Settlement Administration Services, filed July 2, 2009 (Docket Entry 51), at 5.)

-18-

awards, including the fully transferable right to access wireless internet service provided by T-Mobile.  In addition, all current subscribers benefit from T-Mobile's agreement not to include flat-rate ETFs in any contracts for two years.  This is significant.  For example, subscribers who wish to purchase a subsidized handset may now do so without agreeing to a contract with a flat-rate ETF.  These are substantial benefits that counsel for the approval of this settlement as fair, reasonable and adequate.  Indeed, out of millions, only six Class members objected on this basis.

Phee also objects based on the distribution and availability of benefits.  He claims that any persons who were charged an ETF by T-Mobile before February 19, 2009 but paid after that date are unfairly discriminated against in the Settlement, because, Phee argues, such persons give up their rights against T-Mobile, but receive nothing under the settlement.  Additionally, Carder, Lyons and Miller also claim that those individuals who were never charged an ETF *at all* receive no benefits, either.  These objections are baseless, because they are based upon a misreading of the definitions in the Settlement Agreement and accompanying papers.[5]

Pursuant to the terms of the Settlement Agreement, the Settlement Classes are to receive certain stated monetary compensation from the Common Fund (Settlement Agreement, p. 15-16), and qualified members of the Subscriber Class are entitled to receive stated non-cash

---

[5]     Phee's objection to the substance of the notice is likewise without merit.  Phee argues that plan of allocation was not included with the notice, and thus that the class members could not adequately evaluate the settlement, but the plan of allocation was referenced in the settlement agreement (Settlement Agreement, p. 15-16) and was easily accessible to any class member for review on the settlement website.  The additional step of viewing a separate document should not have prevented any class member from evaluating the settlement agreement.  Moreover, notices need not give an exact value for any monetary award.  *See DeBoer v. Mellon Mort. Co.,* 64 F.3d 1171, 1178 (8th Cir. 1995) (recognizing Court "need not resolve all of the underlying disputes . . . and the value of the settlement need not be determined with absolute precision" in the notice because the purpose of a settlement is to avoid delay and expense of trial). "The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential*, 962 F.Supp. at 527.

compensation.  (Settlement Agreement, p. 16).  The Plan of Allocation of Settlement Proceeds provides that this compensation is to be distributed to "Authorized Claimants".  A "Claimant" is "a member of the Settlement Classes who has submitted a Proof of Claim that the Claims Administrator, in its sole discretion, determines to be timely and properly completed and signed."  An "Authorized Claimant" is "a Claimant who was not a member of the Suncom Settlement Class[6] and whose Allowed Claim is (i) greater than zero, as computed pursuant to Paragraphs 8(a) and (b), (ii) a non-cash benefit, as provided in Paragraph 8(c), or (iii) the Proration Benefit, as provided in Paragraph 8(c).

The "Settlement Classes" are the ETF Assessed Class and the Subscriber Class.  The "ETF Assessed Class" encompasses

> all persons in the United States who were parties to a contract for a wireless telephone personal account and were billed a Flat-Rate ETF by T-Mobile and/or its legacy companies from July 23, 1999 until the date that the court preliminarily approves the settlement.  The ETF Assessed Class includes such persons whether or not they paid any portion of the ETF, whether to T-Mobile, any outside collection agency, or other third party to whom T-Mobile has assigned the rights to the ETF.

The Subscriber Class is "all persons in the United States who were or are parties to a contract for a wireless telephone personal account with T-Mobile that included or includes a provision for a Flat-Rate ETF from July 23, 1999 until the date that the court preliminarily approves the settlement, and who have not paid or been billed a Flat-Rate ETF."  By its own terms, the Subscriber Class includes persons who were never charged an ETF.

Properly applying the definitions, it is clear that class members who were billed a Flat-Rate ETF *at any time* between July 23, 1999 and the preliminary approval date (February 19,

---

[6]     The Suncom Settlement Class, as defined in the Settlement Agreement, are members of the class whose claims were settled in *Edwards v. Suncom* in Horry County, South Carolina.

2009) are entitled to file a Proof of Claim for compensation under the Settlement and Plan of Allocation, *regardless of when*, *if ever*, they paid the ETF. The class period is tied to when the class members were *billed* the Flat-Rate ETF, not when they may have *paid* the Flat-Rate ETF. Thus, so long as class members were billed a flat-rate ETF between July 23, 1999 and February 19, 2009, they would be entitled to appropriate compensation under the Settlement and Plan of Allocation.

Moreover, contrary to Phee's contention, the settlement permits Class Members who might terminate their contracts in the future to elect to pay a prorated ETF instead of the flat-rate ETF. Such Class Members are also entitled to non-cash benefits such as bonus calling minutes, bonus text messages, or free access to T-Mobile's wireless network. Accordingly, the claim made by Carder *et al.* that they will continue to be "deterred from switching wireless carriers throughout the remaining term of their contract with T-Mobile" but are "prevent[ed] from receiving any settlement benefit at all" is factually incorrect. (*See* Carder Objection, at 3.)

In summary, the *de minimis* objections ask for a full recovery or a larger share of the recovery pool, but they do not establish that one group of class members benefited at the expense of the other, or that one class received no benefits at all. The infinitesimal number of objections indicates that Class members are overwhelmingly in favor of the Settlement.

### 3) The Parties Have Completed Extensive Pre-Complaint Investigation And Document Discovery

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement. *GM Trucks,* 55 F.3d at 785; *Girsh*, 521 F.2d at 157. This factor "captures the degree of case development that class counsel has accomplished prior to settlement." *GM Trucks*, 55 F.3d at 813. "Through this lens," the Court of Appeals for the Third Circuit has written, "courts can

determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id.  See also Lazy Oil,* 166 F.3d at 588 ("Post-discovery settlements are more likely to reflect the true value of the claim and be fair.") (internal citation omitted).

Nevertheless, even settlements reached at a very early stage and prior to formal discovery may be appropriate if there is no evidence of collusion and the settlement represents substantial concessions by both sides. *See, e.g.*, *Weiss*, 899 F.Supp. at 1301 ("Admittedly, the case is still in the early stages of discovery.").

In *Weiss,* this Court addressed the Third Circuit's recognition:

[T]hat early settlements could maximize the value for the class members while adhering to class action requirements.  That court noted that a class member was better able to gauge his or her individual benefit to being a member of the class when a settlement offer accompanied the certification notice.  The court also stated that a proposed settlement does not foreclose a class member's opportunity to challenge the adequacy of the class representation.  The Third Circuit seemed to stress that to accomplish an early settlement of a class action, a district court must adhere to the strictures of Rule 23 of the Federal Rules of Civil Procedure in the course of certification and settlement.  Absent proof of collusion, this will not prevent the certification of a settlement class.

*Id.* (citations omitted).

This action is being settled at a relatively early stage of this Action, but it was not settled on a blank slate, nor without sufficient information to make a reasoned and reasonable evaluation of the Plaintiffs' and Class members' claims.  First, Class Counsel had previously filed ETF class actions against T-Mobile, and here had the benefit of more information than any other lawyers in the United States.  Specifically, T-Mobile produced to Class Counsel 148,500 pages of documents related to the claims at issue.  Second, Class Counsel in this case has extensive experience in ETF litigation in general, since they have filed virtually identical cases against Sprint-Nextel, Verizon, and AT&T.  Thus, although the present litigation was in its early stages

and prior to formal discovery, Class Counsel had the benefit of years' worth of discovery which had been conducted in similar ETF litigation.

Most importantly, the appropriateness of a class action Settlement is not measured by the thickness of the file or an assessment of the amount of formal discovery taken. *See In re Corrugated Container Anti-Trust Litigation*, 643 F.2d 195, 211 (5th Cir. 1981); *Handschu v. Special Services Div.*, 605 F.Supp. 1384, 1394 (S.D.N.Y. 1985); *Cendant Corp. Litigation*, 264 F.3d 201, 235-36 (3d Cir. 2001); *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1982).  Such a rule, of course, would offend public policy which encourages the early and effective resolution of complicated cases such as this.  Here, Class Counsel are highly experienced litigators whose practices encompass not only complex plaintiffs work but also defense work on behalf of Fortune 500 companies.

### 4) Plaintiffs Face Considerable Risk In Proceeding to Trial

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court must balance the risks of establishing liability and damages against the benefits afforded to the members of the Class, and the immediacy and *certainty* of a substantial recovery against the risks of continuing litigation.  *Girsh*, 521 F.2d at 157.  In *Weiss*, this Court noted in its discussion of this factor that: "the risks surrounding a trial on the merits are always considerable."  *Weiss*, 899 F. Supp. at 1301.  "No matter how confident one may be of the outcome of litigation, such confidence is often misplaced."  *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).[7]  The risks that Plaintiff faces in ultimately

---

[7]    Other decisions that demonstrate the enormous risks of litigation include:  *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (en banc) (after jury verdict in favor of plaintiffs and the Class, reversing the district court's denial of judgment n.o.v. for defendants and remanding with instruction to dismiss the complaint);

obtaining a recovery on behalf of a nationwide class clearly demonstrate that the Settlement provides the Class with a substantial benefit that is not only fair, reasonable and adequate, but an excellent result.

Here, Class Counsel were able to assess the probability of ultimate success on the merits vis-à-vis the risks of establishing liability and damages and maintaining a class action. Class Counsel analyzed and reviewed the information available to them, and concluded that the Settlement is well within the range of reasonableness in light of the best possible recovery, possible set-offs and attendant risks of litigation. Thus, Class Counsel were able to evaluate the relative merits of each side's case and enter into the Settlement with a full view of the case's strengths and weaknesses. *See, e.g., Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

Here, the risks of establishing liability and damages, the fourth and fifth *Girsh* factors, are intertwined with respect to an evaluation of the Settlement. Plaintiff believes that there is a strong possibility of establishing that T-Mobile's flat-rate ETF was an unenforceable penalty. Such a finding, however, would only be a starting point for establishing the recovery of the Class, if any. As a matter of general contract law, if a liquidated damages clause is found to be an unenforceable penalty, the aggrieved party is allowed to recover the actual damages which it can prove. *River Road Associates v. Chesapeake Display and Packaging Co.*, 104 F.Supp.2d 418, 425 (D.N.J. 2000). It is certainly possible that such damages would exceed the amounts recoverable by Plaintiff and the Class. See *Ayyad v. Sprint Spectrum L.P.*, Alameda County Superior Court, California, Case No. RG03-121510, June 12, 2008 (jury found that statewide plaintiff class had paid Sprint $73 million in ETFs, while Sprint's "actual damages … caused by early termination" exceeded $225 million).

---

*Levinson v. Prentice-Hall, Inc.,* 868 F.2d 558, 564-65 (3d Cir. 1989) (jury award of $2.3 million in punitive damages overturned).

The Settlement here presents the Class with real relief now.  Such a consideration is not to be taken lightly, for as one court aptly noted, "no contested lawsuit is ever a 'sure thing.'" *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).

     **5)**       **The Risks Of Maintaining The Class Action Through Trial**

As explained above, Class Counsel believe that this case is wholly appropriate for class certification in the litigation context.  However, there is always a risk that a Court would not find this action suitable for certification as a litigated class, or not find that it was suitable for litigation on a multi-state basis.  Further, even if class certification were granted in the litigation context, class certification can always be reviewed or modified before trial, and a class may be decertified at any time.  As one court has observed in approving a class action settlement:

> Indeed, the Court recognized that its class certification order was subject to alteration or amendment before the decision on the merits.  "To paraphrase Benjamin Franklin, plaintiffs now have their class action, the question is can they keep it."

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 317 (N.D. Ga. 1993)  (citations omitted).  *See also Eggleston v. Chi. Journeyman Plumbers Local Union No. 130 U.A.*, 657 F.2d 890, 896 (7th Cir. 1981) ("a favorable class determination by the court is not cast in stone.").

     **6)**       **Defendant's Ability To Withstand Greater Judgment, And Reasonableness Of The Settlement In Light Of The Best Possible Recovery And All Attendant Risks Of Litigation**

The last three *Girsh* factors are the reasonableness of the settlement in light of (i) Defendant's ability to withstand a greater judgment, (ii) the best possible recovery, and (iii) all the attendant risks of litigation.  These factors, too, support approval of this Settlement and its significant financial and structural benefits.

Countless settlements have been approved where a settling defendant has had the ability to pay greater amounts, and the Third Circuit has noted that this fact alone does not weigh against settlement approval. *See, e.g., Warfarin*, 391 F.3d at 538. More importantly, the court must "measure[] the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *GM Trucks*, 55 F.3d at 806. The Third Circuit further stated in *GM Trucks*:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id.* (citations omitted).

There is no doubt but that T-Mobile could at this moment withstand a judgment far greater than the amount of the Settlement; it is a multi-billion dollar company. However, the world economy has been through an exceedingly rocky twelve months and the Settlement must be viewed amid this very real economic reality.

Determining the best possible recovery on behalf of the Class is more problematic. There is a strong case for liability on behalf of the Class that T-Mobile's ETF is an unenforceable penalty and, thus, T-Mobile should refund the ETFs which were paid by Class members. By the same token, there is a strong case for liability for breach of contract by T-Mobile against Class members for breach of contract (which was the finding of the California jury in the *Ayyad/Sprint* litigation). Indeed, the reason that Class members were charged ETFs is that they terminated their contracts before they expired, *i.e.*, that they breached the contractual provision to purchase wireless services from T-Mobile for a one- or two-year period. The risk, insofar as a recovery on

-26-

behalf of the Class is concerned, is that there is a substantial danger that T-Mobile's breach of contract damages would exceed the Class' damages for the amount of ETFs paid.

A considerable problem with evaluating the best possible recovery on behalf of the Class is that while the amount of the ETFs paid by Class members is a liquidated amount, T-Mobile's breach of contract damages are not.  There are multiple ways of calculating T-Mobile's damages, and which expenses are or are not properly includable as damages is a matter of expert debate. The damages which a jury might ultimately award to T-Mobile will depend upon how it views a classic "battle of the experts."  Plaintiff believes that there is a possibility of a net recovery in favor of the Class, which would be the best possible result if the jury were to accept certain evaluations of T-Mobile financial information, but if Plaintiff was wrong and a jury found that T-Mobile merited a net recovery, *the Class members would be left with nothing*.

Overall, the *Girsh* factors militate strongly in favor of approving the proposed Settlement. The settlement allows a substantial real recovery for all Class members now, rather than waiting for years for a recovery which might be more than the amount of the Settlement, but where there is a substantial risk of recovering nothing.  Class counsel has made a full evaluation of the relevant facts and law and believe that, under all of the facts and circumstances, the Settlement is not only fair and reasonable, but represents a significant victory for the Class.

## CONCLUSION

For all the reasons set forth above and in the accompanying declaration and affidavits, Plaintiff respectfully requests that the Class be finally certified for settlement purposes and the Settlement and Plan of Allocation be approved, and Class Counsel respectfully request that the application for attorneys' fees and reimbursement of expenses be granted.

<div style="margin-left:40%">

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
Attorneys for Plaintiffs and the Class


By:___/s/ James E. Cecchi_____
       JAMES E. CECCHI

</div>

Dated:   July 17, 2009