**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**                        December 8, 2009

## LETTER OPINION

    Re:    <u>Milliron v. T-Mobile USA, Inc.</u>
             <u>Civil Action No. 08-4149 (JLL)</u>

Dear Counsel:

    Pending before the Court is Defendant T-Mobile USA, Inc.'s application to enjoin relitigation of certain attorneys' entitlement to attorneys' fees [CM/ECF Docket Entry No. 109]. The Court has considered the submissions made in support of and in opposition to the instant application. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's application is **granted.**

## BACKGROUND

    This class action involves a claim by Plaintiff Debbie Milliron that flat-rate early-termination fees ("ETFs") charged by T-Mobile violate, <u>inter alia</u>, the Federal Communications Act and various state consumer protection laws. <u>See</u> CM/ECF Docket Entry No. 19 ("Am. Compl."). ETFs constitute a fee of $200 charged to customers for cancellation of their wireless service "at any time after a trial period but before the end of the 'service plan' term, regardless of the reason(s) for cancellation." (<u>Id.</u>, ¶ 3). Milliron is a citizen of California whose subscriber agreement with T-Mobile contained an ETF provision and who was ultimately charged an ETF. (<u>Id.</u>, ¶ 8).

    The parties eventually reached a settlement for $13.5 million. On February 19, 2009, this Court preliminarily approved the settlement and preliminarily certified the settlement class. <u>See</u> CM/ECF Docket Entry No. 86. The Preliminary Approval Order provided, in relevant part, that:

> • "Not later than June 10, 2009, ETF Counsel shall submit to Class Counsel a summary of the attorneys' fees they wish to seek as part of the Settlement. All other claims for attorneys' fees by ETF Counsel shall be deemed waived." (Preliminary Approval Order, ¶ 6).

1

By way of Opinion and Order dated September 10, 2009, final approval was granted to the Milliron settlement. See CM/ECF Docket Entry No. 86. As part of this decision, the Court assessed the reasonableness of the requested attorney fee award and determined a fair allocation of the attorney fee award among plaintiffs' counsel. The Settlement Agreement approved by the Court provides, in relevant part, the following:

- <u>In re Cellphone Termination Fee Cases</u>, JCCP 4332, is listed as a "Related Action." (Settlement Agreement, Art. II.35).

- "Class Released Claims" is defined as "all actions, causes of action, claims, demands, liabilities, obligations, damage claims, restitution claims, injunction claims, declaratory relief claims, fees (including attorneys' fees), costs, sanctions, proceedings and/or rights of any nature and description whatsoever, whether legal or equitable . . . ." (Settlement Agreement, Art. II.6).

- "Not later than twenty-one (21) days prior to the Final Approval Hearing, ETF Counsel shall submit to Class Counsel a summary of the attorneys' fees they wish to seek as part of the Settlement. All other claims for attorneys' fees by ETF Counsel shall be deemed waived." (Settlement Agreement, Art. VI.3).

- "In no event shall T-Mobile's monetary liability under the Settlement Agreement exceed the amount of the Common Fund [$11.5 million]." (Settlement Agreement, Art. III.1).

- "In no event will any attorneys' fees be required to be paid other than from the Common Fund, and in no event will awarded attorneys' fees exceed . . . $4,500,000." (<u>Id.</u>, Art. VI.3).

- "The Court shall retain jurisdiction, after entry of the Final Approval Order and Judgment, with respect to enforcement of the terms of this Settlement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of this Court with respect to enforcement of this Settlement and any disputes with respect thereto, including with respect to disputes about allocation of fees between Class Counsel and ETF Counsel." (<u>Id.</u>, Art. VI.3).

Among the group of attorneys who sought a portion of the attorney fee award in this matter are the attorneys who had litigated ETF claims in the state of California in the matter of Vaughan, et al. v. T-Mobile USA, Inc., Case No. RG03108118 (hereinafter referred to as "California Counsel").[1] The Vaughan action was part of a consolidated proceeding in California state court involving ETF claims against several wireless-service providers. Vaughan, as part of In re Cellphone Termination Fee Cases, JCCP 4332 (Calif. Superior Ct., Alameda Cty, CA), was identified as a Related Action in Article II.35 of the Milliron Settlement Agreement. Thus, all claims pending in Vaughan were settled and released by way of the Milliron settlement. California Counsel did not oppose or otherwise object to the reasonableness of the Settlement Agreement.

In accordance with the Preliminary Approval Order, California Counsel submitted an application for attorneys' fees. After engaging in an in-depth analysis of the basis for their fee request, the applicable law, and fairness considerations, the Court found, in relevant part, the following:

- "The argument advanced by the Bursor and Plutzik Groups, in favor of an 80% allocation of the $4.5 million fee award, is simply not supported by the law. More importantly, it would yield consequences that would wreak havoc on the practice of class action litigation." (Sept. 10, 2009 Op. at 32).

- "The settlement Class in this case is nationwide and includes the California class proposed in the Vaughan matter. But Bursor and Plutzik do not simply espouse a theory in which they are entitled to recover for ETF claims settled as to the class on whose behalf they have litigated for the past five years – the state court class in California. Rather, if some different set of attorneys began and settled a state-court action, on behalf of a statewide class, in a state other than California, the Bursor and Plutzik Groups would claim an entitlement to fees, so long as the action addressed ETFs charged by T-Mobile. This argument is as aggressive as it is untenable – if upheld, it would allow lawyers to successfully litigate one state-court case and thereby put a stake in the ground with respect to fees collected on similar claims in different jurisdictions." (Id.).

- "The Bursor and Plutzik Groups . . . advised this Court that they first offered $49 million and then $40 million to settle the Vaughan matter on a nationwide basis with T-Mobile.

---

[1] California counsel are among those referred to as "ETF Counsel" in the Court's Preliminary Approval Order.

> The matter settled for $13.5 million with Class Counsel in the instant case. Yet, neither Bursor nor Plutzik object to the reasonableness of the settlement reached in this matter." (Id. at 33).

- "After all of this posturing, however, no member of the Plutzik or Bursor Groups objected to the settlement in this matter. In other words, forty-million dollars might have been their starting offer in the California negotiations with T-Mobile but both Plutzik and Bursor agree that $13.5 million is fair and reasonable." (Id. at 34).

- "In conclusion, the Plutzik and Bursor Groups are not entitled to 80% of fees of a nationwide settlement that they agree is fair and reasonable on the simple ground that they successfully defeated multiple motions by T-Mobile in a related state-court action. . . . Class counsel suggested . . . that 16% of the T-Mobile nationwide class resides in California and that 16% would therefore be an appropriate number upon which to base the Bursor/Plutzik compensation request. . . . . [T]his Court relies upon it and agrees with Class Counsel as to its significance. The attorneys who litigated the Vaughan matter are entitled to 16% of the $4.5 million fee award in this action, resulting in an award of $720,000." (Id. at 36-37).

This Court's Final Approval Order was entered on September 10, 2009. On October 9, 2009, California Counsel filed an appeal of this Court's Final Approval Order with the Court of Appeals for the Third Circuit, seeking review of those portions of the Final Approval Order "that address the award or authorization of attorneys' fees, costs and expenses and allocation of such fees, costs and expenses between and among counsel." (CM/ECF Docket Entry No. 97).

California Counsel has since sought leave from a state court in Alameda County, California to file an additional application for attorneys' fees in connection with the Vaughan matter. Leave to file such application was apparently granted by the Alameda Court on October 29, 2009. On November 2, 2009, counsel for T-Mobile filed before this Court an application to enjoin California Counsel from attempting to relitigate the issue of attorneys' fees in California state court, pursuant to the All Writs Act, 28 U.S.C. § 1651. In opposing the application for injunctive relief before this Court, California Counsel has set forth the various grounds upon which it intends to seek the additional fees from T-Mobile before the Alameda Court. Such grounds include: (1) their entitlement to fees attributable to defeating T-Mobile's motion to compel arbitration and defending that ruling in the appellate courts, (2) their entitlement to fees for the "catalyst" effect of their work on T-Mobile's adoption of pro-rated ETFs, and (3) their entitlement to fees because their work in Vaughan was a "catalyst" for bringing about the settlement of ETF claims against T-Mobile. The

parties have not indicated whether or not such application for fees has actually been filed before the California state court judge. That being said, California Counsel has made clear its intent to file and/or pursue such an application in the near future to the extent it has not already done so.

## DISCUSSION

**A.    Jurisdiction**

This Court has jurisdiction over the instant application because it retained jurisdiction "with respect to enforcement of the terms of [the] . . .Settlement" in its Final Approval Order. See Sept. 10, 2009 Op. and Order at 41 (ordering that "Class Counsel and T-mobile shall implement the Settlement Agreement in accordance with its terms and with the holdings set forth in this Opinion and Order"); Settlement Agreement, Art. X.13 ("The Court shall retain jurisdiction, after entry of the Final Approval Order and Judgment, with respect to enforcement of the terms of the Settlement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court with respect to the enforcement of this Settlement and any dispute with respect thereto, including with respect to disputes about allocation of fees between Class Counsel and ETF Counsel."); see generally In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 367-68 (3d Cir. 2001) ("A district court has the power to enforce an ongoing order against relitigation so as to protect the integrity of a complex class settlement over which it retained jurisdiction."). Neither side disputes this.

The Court recognizes that the filing of a notice of appeal generally divests the district court over matters dealing with the merits of such appeal.[2] Although California Counsel has filed an appeal of those portions of the Final Approval Order "that address the award or authorization of attorneys' fees, costs and expenses and allocation of such fees, costs and expenses between and among counsel," the Court will nevertheless, exercise its jurisdiction over the instant application for three reasons. First, the Court has continuing jurisdiction to protect and enforce its judgments so long as it does not disturb the issues that are on appeal.[3] Second, the Court finds that its assessment of and ruling on Defendant's application, regardless of the outcome, would not disturb the issues that are on appeal. Third, neither side disputes this Court's jurisdiction over the instant application. Therefore, the Court will exercise its jurisdiction over Defendant's application.

---

[2] See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

[3] See, e.g., Georgine v. AmChem Prods., No. 93-0215, 1995 WL 561297, at *7 (E.D. Pa. July 10, 2001) (noting that "a district court generally retains jurisdiction to enforce, implement, or otherwise treat as valid judgments and orders that are the subject of pending appeals, as long as this enforcement, implementation, or treatment does not disturb the issues that are on appeal.") (citing Venen v. Sweet, 758 F.2d 117, 123 (3d Cir. 1985)).

**B.     Relitigation Exception**

The All Writs Act gives district courts the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The All Writs Act is limited in scope and application by the Anti-Injunction Act, 28 U.S.C. § 2283.[4] The Anti-Injunction Act prohibits "injunction[s] to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Thus, "[t]he two statutes act in concert, and '[i]f an injunction falls within one of [the Anti-Injunction Act's] three exceptions, the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings." In re Diet Drugs, 369 F.3d at 305. The injunction at issue here was not expressly authorized by statute, so it may be justified only under the Anti-Injunction Act's "in aid of its jurisdiction" or "to protect or effectuate its jurisdiction" exceptions. Such exceptions "are narrow and are 'not [to] be enlarged by loose statutory authority." Id. (quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988)).

Defendant urges the Court to enjoin California Counsel from filing its application for additional attorneys' fees before the California state court. Defendant argues that two Anti-Injunction Act exceptions are applicable and give the Court the authority to impose the requested restraints: (1) the "to protect or effectuate its judgements" exception, also known as the "relitigation exception,"[5] and (2) the "where necessary in aid of its jurisdiction" exception. Because the Court has already granted final approval to the Milliron settlement and entered judgment accordingly, the Court finds the exception "where necessary in aid of its jurisdiction" to be inapplicable;[6] thus, the Court will focus its analysis on whether Defendant's request for injunctive relief should be granted under the relitigation exception to the Anti-Injunction Act.

"The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." Chick Kam Choo, 486 U.S. at 147. Turning now to the narrow issue before this Court, the Court begins by noting the relevant factors which are not in dispute: (1) the Milliron settlement, approved by the Court on September 10, 2009, settled and released ***all*** claims pending in the Vaughan action, (2) among those specific claims which

---

[4] See In re Diet Drugs Prods. Liab. Litig., 369 F.3d 293, 305 (3d Cir. 2004) ( "The authority the All Writs Act imparts to district courts is limited, however, by the Anti-Injunction Act.").

[5] See In re Diet Drugs, 369 F.3d at 305.

[6] See generally In re Diet Drugs, 282 F.3d at 234 ("In complex cases where certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora represents a genuine threat to the jurisdiction of the federal court.")

were released by way of the Milliron settlement were claims for "fees (including attorneys' fees),"[7] (3) the Settlement Agreement provided that any claims for attorneys' fees not submitted to Class Counsel by a certain date prior to the Final Approval Hearing would be deemed waived,[8] (4) California Counsel did not object to or otherwise oppose the fairness of the Milliron settlement, (5) California Counsel filed an appropriate application before this Court seeking an award of attorneys' fees for its work in connection with the Vaughan matter, (6) such application was considered and ruled upon by this Court in its September 10, 2009 Opinion and Order granting final approval to the Milliron settlement, and (7) California Counsel now seek to file an application before a California state court seeking additional attorneys' fees in connection with their work on Vaughan matter.

As a preliminary matter, the Court reiterates that California Counsel argued before this Court not only that the Milliron settlement itself was fair and reasonable, but also that the total amount of attorneys' fees requested ($4.5 million) was fair and reasonable. California Counsel went on to argue for a specific allocation of the $4.5 million and, in support of such request, raised each and every issue contained within their prospective California fee application. These issues were considered and ruled upon by this Court in awarding California Counsel the fees that this Court deemed appropriate.

Each of the grounds upon which California Counsel now seeks to garner fees from a California state court is encompassed by the Milliron settlement – specifically, each is premised entirely upon, and arises out of, their representation of the plaintiffs in the Vaughan matter. Such claims were completely released by the Milliron settlement, which was subsequently approved by this Court.[9] Though California Counsel has creatively attempted to distinguish its prospective California fee application from the Milliron fee allocation process, the crux of California Counsel's position is simple: although they admittedly sought full compensation for their work on the Vaughan litigation within the Milliron fee allocation process, they are deserving of additional fees for specific pieces of the Vaughan litigation from a California state court. California Counsel's efforts in this regard are not only inappropriate but threaten to completely dismantle national class action settlements by allowing plaintiffs' attorneys dissatisfied with the fee allocation to simply continue to look for ways to break down the lawsuit into different pieces and to seek separate compensation for those pieces in state court actions. Such a trend would leave defendants without the finality of judgment promised by the settlement, which would surely hinder the ability of courts to settle multi-state litigation in one forum, at one time.

---

[7] Settlement Agreement, Art. II.6.

[8] Settlement Agreement, Art. VI.3.

[9] See generally In re Linerboard Antitrust Litig., No. 98-5055, 2008 WL 4461914, at *7 (E.D. Pa. Oct. 3, 2008) ("Despite the availability of res judicata, an injunction may still issue under the All Writs Act when it is 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.") (quotations omitted).

California Counsel had an opportunity to litigate the issues raised in its prospective California fee application before this Court during the Milliron fee allocation process. This Court awarded California Counsel fees equivalent to the size of the California class of T-Mobile consumers. California Counsel's prospective California fee application seeks to relitigate issues which were previously presented to and decided by this Court in connection with its final approval of the Milliron settlement. Such issues include not only the proper allocation of the $4.5 million among plaintiffs' counsel, but also the size of the pot of attorneys' fees itself. California Counsel's attempt to enlarge the size of the pot by seeking additional fees directly from the Defendant in California state court would interfere with this Court's September 10, 2009 Order directing both the total amount of the award, as well as the specific allocation of fees. An injunction pursuant to the All Writs Act, and, in particular, the relitigation exception of the Anti-Injunction Act, is not only appropriate but also necessary under the circumstances. See, e.g., In re Linerboard, 2008 WL 4461914, at *9 ("[R]einstatement of the All Writs Act Injunction is appropriate to prevent relitigation of the overall Linerboard counsel fee allocation in state court and to protect this Court's ongoing jurisdiction over the MDL res.").

## CONCLUSION

Based on the reasons set forth above, Defendant's application is **granted.** California Counsel, and all other persons acting in concert with them, are hereby enjoined from filing and/or pursuing an application for attorneys' fees in California state court in connection with their work on the Vaughan matter. An appropriate Order accompanies this Letter Opinion.

    /s/ Jose L. Linares
Jose L. Linares
United States District Judge